# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

Bryan Dryden,

    Plaintiff

v.

State of Nevada, et al.,

    Defendants

Case No.: 2:16-cv-01227-JAD-GWF

**Order**

[ECF Nos. 28, 29]

Pro se plaintiff Bryan Dryden is an inmate at the High Desert State Prison (HDSP), and he brings this civil-rights action against HDSP personnel for events that allegedly occurred there. He moves for leave to file a fourth-amended complaint and attaches the proposed amended complaint to his motion. I grant the motion, finding that the defendants are not prejudiced by the amendment and that it results in no undue delay. After screening the complaint, I allow Dryden's excessive-force claim to proceed against Defendant Neilson and failure-to-protect claim to proceed against Defendant Osborn, dismiss all other claims, and refer this case to the Inmate Early Mediation Program.

**Procedural History**

This action originated in state court and was removed here with Dryden's first-amended complaint.[1] I later screened his first-amended complaint, dismissed some claims and allowed others to proceed, and granted Dryden further leave to amend his complaint to cure the deficiencies in his claims against the individual (as opposed to entity) defendants.[2] Three months after my screening order, Dryden filed a second-amended complaint.[3] Then, seven months later (and without seeking leave to do so), Dryden filed a third-amended complaint.[4]

---

[1] ECF No. 1.

[2] ECF No. 19.

[3] ECF No. 25.

[4] ECF No. 27.

1

Dryden, one month later, filed a motion for leave to file an amended complaint and attached a proposed fourth-amended complaint to his motion.[5] I told Dryden in my original screening that his amended complaint would also be screened, but he filed multiple amended complaints before I had an opportunity to screen any of them.

**A.     The motion for leave to amend is granted.**

Defendants Bob Faulkner and Ted Nielson both oppose Dryden's motion for leave to amend and file a fourth-amended complaint.[6] Rule 15(a)(2) of the Federal Rules of Civil Procedure instructs the court to "freely give leave [to amend a pleading] when justice so requires."[7] Justice has boundaries, however, and federal courts balance five factors when considering a motion to amend: (1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) the futility of the amendment; and (5) whether the plaintiff has previously amended his complaint.[8] The factors do not weigh equally; the Ninth Circuit apportions the greatest weight to the prejudice-to-the-opposing-party factor.[9] The burden is on the opposing party to show prejudice, and absent that showing or a heavy influence from the other factors, there is a presumption in favor of permitting amendment.[10]

Faulkner and Nielson argue that Dryden's motion "unduly delays this litigation" because he "waited ten months 'to correct errors' in his second amended complaint on file."[11] But any delay in this litigation is not because of Dryden's amendments (or requested amendment)—it is because of this court's heavy docket. I granted Dryden leave to amend his first-amended

---

[5] ECF No. 29.

[6] ECF No. 31.

[7] FED. R. CIV. P. 15(a)(2).

[8] *Desertrain v. City of Los Angeles*, 754 F.3d 1147, 1154 (9th Cir. 2014).

[9] *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

[10] *Id.* (citing *DCD Programs, Ltd. V. Leighton*, 833 F.2d 183, 186–87 (9th Cir. 1987)).

[11] ECF No. 31 at 3.

complaint, and I told him that I would screen his second-amended complaint once he filed it.[12] Since that order, Dryden has filed a third-amended complaint and requested leave to file a fourth-amended complaint, but my docket has been impacted and I have been unable—until now—to screen any of these amended complaints. And Dryden attached his proposed fourth-amended complaint to his leave-to-amend motion, so I can screen it immediately without further delaying these proceedings. Whether I screen the second-amended complaint or the fourth-amended complaint, the delay is the same. I therefore find that the defendants will not suffer any undue delay or prejudice by granting Dryden's motion. And the defendants offer no other argument for denying the motion, so I grant it and screen the fourth-amended complaint.

**B.  Screening standard for pro se prisoner claims**

Federal courts must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or an officer or employee of a governmental entity.[13] In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous or malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who has immunity.[14] To state a § 1983 claim, a plaintiff must allege two essential elements: (1) the violation of a right secured by the Constitution or laws of the United States, and (2) that the alleged violation was committed by a person acting under the color of state law.[15] Dismissal for failure to state a claim is proper only if it is clear that the plaintiff cannot prove any set of facts in support of the claim that would entitle him to relief.[16]

In making this determination, the court takes as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff.[17] Allegations of a pro se plaintiff are

---

[12] ECF No. 19 at 11.

[13] *See* 28 U.S.C. § 1915A(a).

[14] *See* 28 U.S.C. § 1915A(b)(1)(2); 28 U.S.C. § 1915(e)(2) (adding the requirement that a claim be dismissed if "the allegation of poverty is untrue").

[15] *See West v. Atkins*, 487 U.S. 42, 48 (1988).

[16] *See Morely v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999).

[17] *See Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996).

3

held to less stringent standards than formal pleadings drafted by lawyers,[18] but a plaintiff must provide more than mere labels and conclusions.[19] "While legal conclusions can provide the framework of a complaint, they must be supported with factual allegations."[20] "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[21]

All or part of a complaint filed by a prisoner may also be dismissed *sua sponte* if the prisoner's claims lack an arguable basis either in law or in fact. This includes claims based on legal conclusions that are untenable (e.g., claims against defendants who are immune from suit or claims of infringement of a legal interest that clearly does not exist), as well as claims based on fanciful factual allegations (e.g., fantastic or delusional scenarios).[22] If it's clear from the face of the complaint that any deficiencies could not be cured by amendment, the court is not required to grant leave to amend.[23]

**C.    Screening Dryden's fourth-amended complaint**

I previously allowed Dryden to proceed on his failure-to-protect claim against defendant Osborn and excessive-force claim against defendants Neilson, Osborn, and Doe.[24] I granted Dryden leave to amend his claims for retaliation, deliberate indifference to serious medical

---

[18] *Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *see also Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) (recognizing that pro se pleadings must be liberally construed).

[19] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[20] *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

[21] *Id.*

[22] *See Neitzke v. Williams*, 490 U.S. 319, 327–28 (1989); *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

[23] *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

[24] ECF No. 19 at 10.

needs, access to the courts, and respondeat superior.[25] In his fourth-amended complaint, Dryden adds new claims and defendants, suing a total of seven defendants over nine counts.[26]

### 1. Factual allegations[27]

Dryden's story goes like this: On January 8, 2014, Defendant Osborn put Dryden in a transport van. Earlier that day, Osborn sat in on Dryden's court hearing and knew that he was a protective-custody inmate. Osborn then told the general-population inmates in the van that Dryden was a "snitch" and that he was "turning" state's evidence. The general-population inmates threatened to kill him and made "aggressive derogatory remarks" that made him fear for his life. Dryden told the officers that the other inmates were "going to kill [him] before [he has] a chance to hit the streets."

Dryden alleges that Defendant Neilson overheard all of this, but he interpreted Dryden's cries for help as threats against the officers, and he used that as a pretext to beat Dryden up. Neilson ordered Dryden against a wall, slammed him into the wall, split his eyebrow, and threatened to murder him. This assault allegedly occurred in front of Defendant Joseph, who stood by and watched. Neilson then bounced Dryden off of a door frame, lifted him up off his feet, and slammed his face into a plexiglass window. He also slammed Dryden into a concrete bench, causing Dryden to skin his knees. Neilson threatened Dryden not to file a grievance "or else."

Dryden claims that he experienced and continues to experience substantial physical and psychological pain due to Neilson's "beating." He also claims that he is now fearful of what Neilson will do to him when he finds out about this lawsuit. Finally, Dryden alleges that Defendants Stroud, Neven, Cox, and McDaniels had a duty to train and supervise subordinate staff and to create customs, policies, and practices to ensure the safe administration of HDSP.

---

[25] *Id.* at 10–11.

[26] *See generally* ECF No. 29-1.

[27] These factual allegations are taken directly from Dryden's fourth-amended complaint, so I cite to it generally for this section. *Id.* They are not intended as findings of fact.

5

I find that Dryden's counts are best construed as four claims: (1) failure to protect against Osborn (counts I, II, III); (2) excessive force against Neilson and Joseph (counts IV, V, VI, VII, VIII); (3) retaliation against Neilson (counts IV, V, VI); and (4) respondeat superior against Stroud, Neven, Cox, and McDaniels (count IX).

### 2. *Failure to protect (counts I, II, and III)*

Under the Eighth Amendment, prison officials have a duty to protect prisoners from violence at the hands of other prisoners.[28] To establish a violation of this duty, the prisoner must establish that prison officials were deliberately indifferent to serious threats to the inmate's safety.[29] To demonstrate this, the prisoner must show that "the official [knew] of and disregard[ed] an excessive risk to inmate . . . safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the official] must also draw the inference."[30] Prison officials may not escape liability because they cannot, or did not, identify the specific source of the risk; the serious threat can be one to which all prisoners are exposed.[31]

I find that Dryden has stated a colorable failure-to-protect claim against Defendant Osborn. He alleges that Osborn outed him as a "snitch" who was "turning" state's evidence to a van full of general-population inmates, which induced them to threaten to kill him. Then Dryden told the officers—including Osborn—that they had threatened him, but the officers did nothing. So, this claim may proceed against Osborn.

### 3. *Excessive force (counts IV, V, VI, VII, and VIII)*

When a prison official is accused of using excessive physical force in violation of the cruel-and-unusual-punishment clause of the Eighth Amendment, the claim turns on whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and

---

[28] *Farmer v. Brennan*, 511 U.S. 825, 833 (1994).

[29] *Id.* at 834.

[30] *Id.* at 837.

[31] *Id.* at 843.

6

sadistically for the purpose of causing harm.[32] In determining whether the use of force was wanton and unnecessary, the court may also consider: (1) whether there was a need for force; (2) whether the force was proportional to the need; (3) the threat reasonably perceived by the responsible officials; and (4) any efforts made to mitigate the need to respond with force.[33] Although an inmate need not have suffered serious injury to bring an excessive-force claim against a prison official, the Eighth Amendment's prohibition on cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force.[34]

I find that Dryden has stated a colorable excessive-force claim against Neilson. Dryden alleges that he told the officers that the other inmates were threatening to kill him, but Neilson misinterpreted that as a threat against the officers. Neilson responded by slamming Dryden into a wall, a door frame, plexiglass, and a concrete bench. He split Dryden's eyebrow, threatened to murder him, skinned his knees, and told him not to file a grievance "or else." So, this excessive-force claim may proceed against Neilson.

### 4. *Retaliation (counts IV, V, and VI)*

Prisoners have a First Amendment right to file prison grievances and to pursue civil-rights litigation in the courts.[35] "Without those bedrock constitutional guarantees, inmates would be left with no viable mechanism to remedy prison injustices. And because purely retaliatory actions taken against a prisoner for having exercised those rights necessarily undermine those protections, such actions violate the Constitution quite apart from any underlying misconduct they are designed to shield."[36]

To state a viable First Amendment retaliation claim in the prison context, a plaintiff must allege: "(1) [a]n assertion that state actor took some adverse action against an inmate (2) because

---

[32] *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992) (citing *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986)).

[33] *Hudson*, 503 U.S. at 7.

[34] *Id.* at 9–10.

[35] *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2004).

[36] *Id.*

7

of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."[37]

I find that Dryden has failed to state a colorable retaliation claim against any defendant. Dryden alleges that Neilson beat him up and then threatened him not to file a grievance "or else." But Dryden does not allege that Neilson attacked him because of his protected activity. Dryden had not yet filed a grievance and has not alleged that he indicated to Neilson (or any other defendant) that he was going to file a grievance.[38] So, based on the allegations, Neilson tried to prevent Dryden from engaging in protected conduct (filing grievances about the attack), but he did not retaliate against Dryden for engaging in protected conduct.[39] This claim is therefore dismissed without prejudice.

### 5. *Respondeat superior (count IX)*

There is no respondeat superior liability under § 1983.[40] "A defendant may be held liable as a supervisor under § 1983 if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation."[41]

Dryden fails to state a colorable supervisory-liability claim. The supervisory defendants cannot be held liable under § 1983 simply because they supervise Neilson. They can only be

---

[37] *Id.* at 567–68.

[38] *See Garcia v. Strayhorn*, 2014 WL 4385410, at *6 (S.D. Cal. Sept. 3, 2014) ("More recently, in the context of prisoner civil rights actions under Section 1983, a number of courts have concluded that verbal statements made by an inmate that essentially constitute a grievance, or that indicate an intent to file a formal written grievance, are protected by the First Amendment. [Citing six district court cases for support].").

[39] Dryden therefore brought his excessive-force claim without filing a grievance. This raises a potential exhaustion issue, but I defer any consideration of that issue until after the complaint has been served and the parties have had an opportunity to file and respond to motions to dismiss.

[40] *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (holding that "[a] supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them.").

[41] *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011).

8

held liable if they personally participated in the attack, directed the attack, or knew that the attack was going to occur and did nothing to stop it. Nothing in Dryden's allegations suggests that any of these scenarios would be true for any of the supervisory defendants. So, all claims against defendants Stroud, Neven, Cox, and McDaniels are dismissed.

**D.     Motion to extend prison copy-work limit**

Dryden has also filed a motion to extend his copy-work limit.[42] An inmate has no constitutional right to free photocopying.[43] NDOC administrative regulation 722.01(7)(D) provides that inmates "can only accrue a maximum of $100 debt for copy work expenses for all cases, not per case." Courts in this district have ordered the prison to provide additional limited photocopying when it is necessary for an inmate to provide copies to the court and other parties.[44] Because Dryden will have to serve the defendants with copies of his filings, I grant his motion and order that his copy-work limit be extended by $5.00.

## Conclusion

Accordingly, IT IS HEREBY ORDERED that Dryden's motion for leave to file an amended complaint **[ECF No. 29] is GRANTED**. The **Clerk of Court** is directed to **DETACH and FILE** the fourth-amended complaint **[ECF No. 29-1], SEND Dryden** a courtesy copy of it, and **ELECTRONICALLY serve a copy of it and this order on the Office of the Attorney General of the State of Nevada,** by adding the Attorney General of the State of Nevada to the docket sheet. This does not indicate acceptance of service.

IT IS FURTHER ORDERED that:

- The fourth-amended complaint (ECF No. 29-1) is the operative complaint in this case;
- Dryden's failure-to-protect claim (counts I, II, and III) may PROCEED against Defendant Osborn;

---

[42] ECF No. 28.

[43] *Johnson v. Moore*, 948 F.2d 517, 521 (9th Cir. 1991).

[44] *See Allen v. Clark Cnty. Det. Ctr.*, 2011 WL 886343, at *2 (D. Nev. Mar. 11, 2011) (Foley, M.J.).

9

- Dryden's excessive-force claim may PROCEED against Defendant Neilson;
- Dryden's retaliation claim is DISMISSED; and
- Dryden's respondeat superior claim is DISMISSED.

IT IS FURTHER ORDERED that Dryden's motion to extend his copy-work limit **[ECF No. 28] is GRANTED.** The Nevada Department of Corrections is ordered to **EXTEND Dryden's copy-work limit by $5.00.**

IT IS FURTHER ORDERED that, given the nature of the claims that may proceed, this action is **STAYED until August 21, 2018, to allow the parties an opportunity to settle their dispute** before the $350 filing fee is paid, an answer is filed, or the discovery process begins. During this 90-day stay, no other pleadings or papers may be filed in this case, and the parties may not engage in any discovery. The court **will refer this case to the Inmate Early Mediation Program**, and the court will enter a subsequent order. On or before **August 21, 2018**, the Office of the Attorney General must file the report form attached to this order regarding the results of the 90-day stay, even if a stipulation for dismissal is entered prior to the end of the 90-day stay. If the parties proceed with this action, the court will then issue an order setting a date for defendants to file an answer or other response. Following the filing of an answer, the court will issue a scheduling order setting discovery and dispositive-motion deadlines.

IT IS FURTHER ORDERED that "settlement" may or may not include payment of money damages. It also may or may not include an agreement to resolve Dryden's issues differently. A compromise agreement is one in which neither party is completely satisfied with the result, but both have given something up and both have obtained something in return.

IT IS FURTHER ORDERED that, if the case does not settle, Dryden will be required to pay the full $350.00 filing fee. This fee cannot be waived. If Dryden is allowed to proceed *in forma pauperis*, the fee will be paid in installments from his prison trust account under 28 U.S.C. § 1915(b). If Dryden is not allowed to proceed *in forma pauperis*, the $350.00 will be due immediately.

IT IS FURTHER ORDERED that, if any party seeks to have this case excluded from the inmate mediation program, that party must file a "motion to exclude case from mediation" on or before June 11, 2018. The responding party will have 7 days from service of that motion to file a response. No reply may be filed. After that, the Court will issue an order, set the matter for hearing, or both.

IT IS FURTHER ORDERED that **the Attorney General's Office must advise the Court by June 11, 2018, whether it will enter a limited notice of appearance on behalf of defendants** for the purpose of settlement. No defenses or objections, including lack of service, will be waived as a result of the filing of the limited notice of appearance.

Dated: May 17, 2018

_____
U.S. District Judge Jennifer A. Dorsey

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

Bryan Dryden,

    Plaintiff

v.

State of Nevada, et al.,

    Defendants

Case No.: 2:16-cv-01227-JAD-GWF

**Attorney General's Report of Results of 90-Day Stay**

**NOTE: This form must be filed only by the Office of the Attorney General. The inmate plaintiff MUST NOT file this form.**

On _____ [*the date of the screening order*], the Court issued its screening order stating that it had conducted its screening pursuant to 28 U.S.C. § 1915A, and that certain specified claims in this case would proceed. The Court ordered the Office of the Attorney General of the State of Nevada to file a report 90 days after the date of the entry of the Court's screening order to indicate the status of the case at the end of the 90-day stay. By filing this form, the Office of the Attorney General hereby complies with that order.

## REPORT FORM

[Identify which of the following two situations (identified in bold type) describes the case, and follow the instructions corresponding to the proper statement.]

**Situation One: Mediated Case**: **The case was assigned to mediation by a court-appointed mediator during the 90-day stay.** [If this statement is accurate, check **ONE** of the six statements below and fill in any additional information as required, then proceed to the signature block.]

    \_\_\_\_\_    A mediation session with a court-appointed mediator was held on _____ [*enter date*], and as of this date, the parties have reached a settlement (*even if paperwork to memorialize the settlement remains to be completed*). (*If this box is checked, the parties are on notice that they must SEPARATELY file either a contemporaneous stipulation of dismissal or a motion requesting that the Court continue the stay in the case until a specified date upon which they will file a stipulation of dismissal.*)

    \_\_\_\_\_    A mediation session with a court-appointed mediator was held on _____ [*enter date*], and as of this date, the parties have not reached a settlement. The Office of the Attorney General therefore informs the Court of its intent to proceed with this action.

|   |   | No mediation session with a court-appointed mediator was held during the 90-day stay, but the parties have nevertheless settled the case. (*If this box is checked, the parties are on notice that they must SEPARATELY file a contemporaneous stipulation of dismissal or a motion requesting that the Court continue the stay in this case until a specified date upon which they will file a stipulation of dismissal.*) |

\_\_\_\_ No mediation session with a court-appointed mediator was held during the 90-day stay, but one is currently scheduled for _____ [*enter date*].

\_\_\_\_ No mediation session with a court-appointed mediator was held during the 90-day stay, and as of this date, no date certain has been scheduled for such a session.

\_\_\_\_ None of the above five statements describes the status of this case. Contemporaneously with the filing of this report, the Office of the Attorney General of the State of Nevada is filing a separate document detailing the status of this case.

\* \* \* \* \*

**Situation Two: Informal Settlement Discussions Case**: **The case was NOT assigned to mediation with a court-appointed mediator during the 90-day stay; rather, the parties were encouraged to engage in informal settlement negotiations.** [If this statement is accurate, check **ONE** of the four statements below and fill in any additional information as required, then proceed to the signature block.]

\_\_\_\_ The parties engaged in settlement discussions and as of this date, the parties have reached a settlement (*even if the paperwork to memorialize the settlement remains to be completed*). (*If this box is checked, the parties are on notice that they must SEPARATELY file either a contemporaneous stipulation of dismissal or a motion requesting that the Court continue the stay in this case until a specified date upon which they will file a stipulation of dismissal.*)

\_\_\_\_ The parties engaged in settlement discussions and as of this date, the parties have not reached a settlement. The Office of the Attorney General therefore informs the Court of its intent to proceed with this action.

\_\_\_\_ The parties have not engaged in settlement discussions and as of this date, the parties have not reached a settlement. The Office of the Attorney General therefore informs the Court of its intent to proceed with this action.

\_\_\_\_ None of the above three statements fully describes the status of this case. Contemporaneously with the filing of this report, the Office of the Attorney General of the State of Nevada is filing a separate document detailing the status of this case.

Submitted this _____ day of _____, \_\_\_\_\_ by:

Signature: _____

Name: _____

Phone #: _____

Email: _____