| 1 | | |
|---|---|---|
| 2 | | |
| 3 | | |

BRYAN DRYDEN,                                    Case No. 2:16-cv-01227-JAD-EJY

            Plaintiff,
                                                 **ORDER**
      v.

STATE OF NEVADA, *et al.*,

            Defendants.

Before the Court is Plaintiff Bryan Dryden's First Motion to Compel Discovery (ECF No. 106); Plaintiff's Second Motion to Compel Discovery (ECF No. 107); Plaintiff's Motion to Appoint Private Investigator (ECF No. 108); Plaintiff's Motion for Appointment of Counsel (ECF No. 109); Plaintiff's Motion for Preliminary Injunction (ECF No. 110); Plaintiff's Motion for Temporary Restraining Order (ECF No. 111); Plaintiff's Third Motion to Compel Discovery (ECF No. 120); Plaintiff's Motion for Leave to File Reply to Defendants' Opposition for a Preliminary Injunction and Temporary Restraining Order (ECF No. 124); Plaintiff's Fourth Motion to Compel Discovery (ECF No. 125); and, Plaintiff's Motion to Extend Discovery (ECF No. 127). The Court has also reviewed Defendants Ted Nielson and Kenneth Osborne's Response to Plaintiff's First Motion to Compel Discovery (ECF No. 114); Defendants' Response to Plaintiff's Second Motion to Compel Discovery (ECF No. 115); Plaintiff's Reply to Defendants' Response to Plaintiff's First and Second Motions to Compel Discovery (ECF No. 121); Defendants' Response to Plaintiff's Motion to Appoint Private Investigator (ECF No. 118); Defendants' Response to Plaintiff's Motion for Appointment of Counsel (ECF No. 119); Plaintiff's Reply to Defendants' Response to Plaintiff's Motion for Appointment of Counsel and Private Investigator (ECF No. 123); Defendants' Response to Plaintiff's Motion for Preliminary Injunction (ECF No. 116); Defendants' Response to Plaintiff's Motion for Temporary Restraining Order (ECF No. 117); Defendants' Response to Plaintiff's Third Motion to Compel Discovery (ECF No. 122); and, Defendants' Response to Plaintiff's Fourth Motion to Compel Discovery (ECF No. 126). The Court finds as follows.

## I.    **<u>BACKGROUND</u>**

Plaintiff Bryan Dryden is an inmate incarcerated in the Nevada Department of Corrections ("NDOC"), and currently housed at High Desert State Prison ("HDSP"). Plaintiff alleges that on January 8, 2014, Defendant Correctional Officer ("CO") Kenneth Osborne placed Plaintiff, a Protective Custody ("PC") inmate, in a transport van full of General Population ("GP") inmates at the Clark County Detention Center ("CCDC"). ECF No. 35 at 6–7. Osborne allegedly informed the GP inmates that Plaintiff was a "snitch" and was supplying evidence to the state of Nevada, leading the GP inmates to threaten to kill Plaintiff and make aggressive derogatory remarks. *Id*. at 7. Plaintiff supposedly yelled for the officers to help him at which point another CO, Defendant Ted Nielson, "ordered the plaintiff against the wall[] while plaintiff was in [f]ull restraints[,] . . . slammed plaintiff into the wall [and] into the transport van . . . in plain view of the jail cameras, caus[ed] Plaintiff's eyebrow to lacerate, and threatened to murder plaintiff." *Id*. Once the transport van arrived at HDSP, Plaintiff alleges that Defendant Nielson continued his assault in plain view of Sergeant Joseph who failed to stop Nielson from supposedly beating Plaintiff.[1] *Id*. at 7. After sending Plaintiff to the infirmary for treatment, Defendant Nielson warned Plaintiff to "[n]ot [f]ile a grievance or else." *Id*. at 8. Approximately three weeks later, on January 29, 2014, Plaintiff alleges Defendant Nielson threw him against a wall, and warned Plaintiff that if he continued with the grievance process, Nielson would find a way to kill him. ECF No. 106 at 3.

On June 18, 2019, Plaintiff claims Defendant Nielson placed Plaintiff in a court holding tank full of GP inmates. ECF Nos. 110 and 111 at 3. Plaintiff contends that his experience is one of numerous similar events over the last few months in which a PC inmate has been deliberately placed into holding tanks with GP inmates, with COs urging GP inmates to beat the PC inmate and rewarding them for doing so. *Id*. at 4. Despite filing multiple grievances repeating these allegations,

---

[1]    As of the May 22, 2018 Screening Order issued by United States District Judge Jennifer A. Dorsey, Sergeant Joseph was dismissed from this case. ECF No. 34.

2

Plaintiff claims NDOC Warden Brian E. Williams, Sr. has denied that Defendant Nielson has had any contact with Plaintiff. *Id*. at 5. The most recent denial allegedly occurred on June 18, 2019.[2] *Id*.

On June 23, 2019, NDOC issued an Inmate Grievance Report denying Plaintiff's grievance and stating:

> When it became apparent that inmate Dryden, Bryan . . . was on a randomly assigned court transport run with Officer Ted Nielson, it was immediately decided to have the second Transport Officer Adam Burnside be the hands on escorting Officer for [inmate] Dryden. The Transportation Office was notified. Correctional Officer Neilson [sic] had no conversation with inmate Dryden and no direct contact. Inmate Dryden has made false claims of assault against C/O Nielson prior. In lieu of that, the NDOC Lieutenant has ordered that C/O Nielson not to be involved in any future escorts involving inmate Dryden.

*Id*. at 9 ("Inmate Grievance Report").

## A. Plaintiff's Motions to Compel Discovery (ECF Nos. 106, 107, 120, 125)

To date, Plaintiff has filed four Motions to Compel. *Id*. Plaintiff's First Motion to Compel asks the Court to compel Defendant Kenneth Olson to fully answer Interrogatory No. 4 (set one) signed June 24, 2019.[3] ECF No. 106 at 1. Plaintiff also asks the Court to compel (1) the Attorney General's Office to produce CCDC carport camera footage for January 8, 2014 from approximately noon to 2 p.m., and (2) the Clerk of Court to subpoena the Attorney General's Office for camera footage of the court holding tanks in the hallway next to Metro. *Id*. at 3. Finally, Plaintiff asks the Court for assistance in obtaining camera footage from CCDC of the court holding tank where Plaintiff claims he was singled out by Ted Nielson on June 18, 2019. *Id*. at 4.

With respect to Interrogatory No. 4, in addition to objections, Defendant Osborne responded that he has no "specific knowledge regarding the cameras at court holding on January 8, 2014, or any other date." ECF No. 114-2 (Defendant Osborne's Answer to Interrogatory No. 4) at 4. Defendants reiterate this fact in their Opposition to Plaintiff's First Motion to Compel and further

---

[2] Warden Williams was dismissed from this case on May 22, 2018. ECF No. 34.

[3] Plaintiff's Interrogatory No. 4 asks Defendant Kenneth Osborne: "What do you know about the cameras at court holding on Jan. 8, 2014, under carport 8, in the hallways? Expectations of P.Q.#4…To establish grounds for a court order for camera footage. Do they hold records? How long? Are they available? Do/Did Inspector General retrieve camera footage?" ECF No. 114-1 (Plaintiff's First Set of Interrogatories Directed to Kenneth Osborn[e]) at 8.

state that "Osborne is a NDOC Corrections officer and does not have any knowledge of the camera system at either the court or CCDC, as neither the court nor CCDC are NDOC facilities." ECF No. 114 at 4-5.

Plaintiff's Second Motion to Compel requests the Court compel Defendant Nielson and Deputy Attorney General "M. Feeley" to produce the January 8, 2014 Inspector General report "involving Ted Neilson [sic]." ECF No. 107 at 1–2. Plaintiff represents that he "submitted a written request for these documents . . . on May 18, 2019," but the documents have not been received. *Id*. at 2:4–7. Defendant Nielson objected to Plaintiff's request because it assumes a battery occurred, which Defendant disputes. ECF No. 115-2 (Defendant Nielson's Response to Plaintiff's Request for Production of Documents No. 1) at 5. In their Opposition to Plaintiff's Second Motion to Compel, Defendants explain that Nielson "is a NDOC Corrections Officer and does not work for the Inspector General's Office. Defendant Nielson is not in possession of an I.G. report concerning the January 8, 2014 incident nor is he aware if the report even exists." ECF No. 115 at 4.

Plaintiff's Third Motion to Compel moves the Court to compel Defendant Nielson to fully respond to Interrogatory No. 1.[4] ECF No. 120 at 1. Plaintiff also requests the Clerk of Court subpoena the Attorney General's office to produce all incident reports for the past 25 years, any reports from the Incident Review Panel, and all reports and events in the Nevada Offender Tracking Information System ("NOTIS") involving Defendant Nielson. *Id*. at 3. In response, Defendant Nielson objected to Interrogatory No. 1 as overly broad and then stated that, "excluding the present matter, Defendant has had one grievance filed against him regarding excessive force; however, this was dismissed after a use of force panel was convened and found that Defendant did not use excessive force." ECF No. 122-2 (Defendant Nielson's Answer to Interrogatory No. 1) at 2.

Plaintiff's Fourth Motion to Compel requests the Court compel Defendants' counsel Matthew P. Feeley to produce "Plaintiff[']s medical record from . . . January 8, 2014," and "Inspector General[']s Report(s) on . . . January 8, 2014 [and] January 29, 2014." ECF No. 125 at 1, 3. Plaintiff requests: "[a] list of Inmate[']s names, BAC#s, [l]ocation[s] who were in Transport Van on January

---

[4] Plaintiff's Interrogatory No. 1 asks Defendant Ted Nielson to: "[l]ist & identify all inc[i]dents, grievances, lawsuits against [Nielson] for assault & [b]attery, use of excessive force, [and] failure to [p]rotect." ECF No. 122-1 (Plaintiff's First Set of Interrogatories Directed to Ted Nielson) at 7.

8, 2014" from unspecified Defendants. *Id.* at 2. Plaintiff continues to request Defendant Nielson's NOTIS records and "[a] subpoena ordering Clark County Detention Center to [p]roduce camera footage." *Id.* In their Opposition to Plaintiff's Fourth Motion to Compel, Defendants note that "Mr. Feeley is not a party to this action, but is counsel who represents the Defendants in this matter. As such, it was improper for Plaintiff to serve a discovery request directed to Matthew P. Feeley in the first place." ECF No. 126 at 3 (citation omitted).

Plaintiff requests varying amounts of expenses in his four Motions to Compel, but never elaborates on how he arrived at the amounts requested. ECF Nos. 106 and 107 at 2; ECF No. 120 at 2; ECF No. 125 at 2.

### B. Plaintiff's Motion to Appoint Private Investigator (ECF No. 108)

Plaintiff moves the Court to appoint a private investigator at the state's expense. ECF No. 108. Plaintiff argues that he requires "expert witness testimony by medical examiners," "[d]epositions to be given . . . ," and "[p]rivileged & [p]rivate information [to be] gathered." *Id.* at 1. In support of this motion, Plaintiff cites his lack of experience litigating a civil case, notes he is proceeding *in forma pauperis*, and claims he has only six cents remaining on his inmate trust account. *Id.* at 2.

### C. Plaintiff's Motion for Appointment of Counsel (ECF No. 109)

Plaintiff asks the Court to appoint counsel to represent him in this case pursuant to 28 U.S.C. § 1915(e)(1). ECF No. 109. Plaintiff maintains he is not able to effectively represent himself through these proceedings because his "arms are in severe pain" and his "tendons [and] muscles fuse together when in continued use." *Id.* at 2. Plaintiff further contends that, as an inmate, he is restricted from keeping certain information he is seeking on his person or in his possession. *Id.* at 3. Plaintiff alleges that he "has limited access to the law library[,] limited knowledge of the law, [and] a general education diploma." *Id.* at 4. Plaintiff also says that he suffered severe head trauma as a result of Defendants' actions and suffers from Attention Deficit Disorder. *Id.* Plaintiff claims that if the case proceeds to trial, he will "not likely be able to articulate this case befor[e] the jury [because he] has

1  a phobia talking to strangers or large crowds[, which] creat[es] severe anxiety." *Id*. Plaintiff

2  concludes that he is "unable to afford an attorney," and the few attorneys who he has contacted have

3  not expressed "much interest" in his case. *Id*. at 5.

### D. Plaintiff's Order to Show Cause for a Preliminary State of Nevada Injunction and a Temporary Restraining Order (ECF Nos. 110 and 111).

Plaintiff requests injunctive relief "enjoining the [D]efendants, their successors in office, agents & employees & all other persons acting in concert & participation with them, from . . . gathering . . . general population inmates together with protective custody [inmates] . . . in transport vans [and] court holding tanks." *Id*. at 1-2. Plaintiff also seeks injunctive relief restraining "[D]efendants Ted Neilson [sic], Kenneth Osborn[e], & each of their officers, agents, employers, & all persons acting in [concert] or participating with them . . . from [r]etaliati[ng], [r]iducl[ing], [or] act[ing with] ag[g]ression towards Plaintiff Dryden for filing [his] civil complaint against Defendants." *Id*. at 2.

## II. DISCUSSION

### A. Plaintiff did not meet and confer with Defendants before filing his Motions to Compel in Violation of Fed. R. Civ. P. 37(a)(1) and LR 26-7(c), and Defendants have properly responded to the discovery requests.

Fed. R. Civ. P. 37(a)(1) requires a party "mov[ing] for an order compelling disclosure or discovery . . . [to] include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Local Rules of Practice ("LR") 26-7(c) further states that "[d]iscovery motions will not be considered unless the movant (1) has made a good-faith effort to meet and confer . . . before filing the motion, and (2) includes a declaration setting forth the details and results of the meet-and-confer conference about each disputed discovery request." LR IA 1-3(f)(1) permits an incarcerated individual appearing *pro se* to satisfy the meet-and-confer requirement through written communication. Provided the meet and confer requirement is met, "[a] party seeking discovery may move for an order compelling an answer, designation, production or inspection . . . if a party fails to answer an interrogatory submitted under Rule 33; or a party fails to produce documents . . . as requested under Rule 34." Fed. R. Civ. P. 37(a)(3)(B)(iii); (iv).

In a prior order in the same case, Judge Foley (Ret.) explained that "[a] motion for an order compelling disclosure or discovery is governed by Rule 37 of the Federal Rules of Civil Procedure and provides that 'the motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure in an effort to obtain it without court action.' Fed. R. Civ. P. 37(a)(1)." ECF No. 83 at 1. In this same Order, the Court explained to Plaintiff that he must meet and confer with Defendants "to attempt to resolve the dispute pursuant to Rule 37 of the Federal Rules of Civil Procedure and Local Rule ("LR") IA 1-3(f) and LR 26-7." Plaintiff's Motions to Compel fail because he does not evidence that he made any effort to meet and confer with Defendants, in accordance with the Rules and as explained by Judge Foley, before filing these motions. *Id.*[5]

Moreover, even if Plaintiff had met and conferred with Defendant prior to bringing the present motions, the Court finds that Defendants have satisfactorily responded to Plaintiff's discovery requests. Plaintiff cannot ask the Court to compel discovery responses simply because he is dissatisfied with the answers received. Defendants Nielson and Osborne cannot be expected to turn over evidence they do not have. Additionally, Michael P. Feeley is the Deputy Attorney General representing Defendants in this matter, and is not a party to this action. "A party may [only] serve on any other party a request [for production] within the scope of Rule 26(b)." Fed. R. Civ. P. 34(a).

There is also no basis for ordering payment of expenses in this case. Fed. R. Civ. P. 37(a)(5)(A)(i)–(iii). Plaintiff did not attempt to obtain discovery responses without court intervention; Defendants' responses were substantially justified; and, Plaintiff provides no explanation or support as to how he arrived at his requested expenses. The Court therefore denies Plaintiff's Motions to Compel Discovery (ECF Nos. 106, 107, 120, 125) and the requested expenses therein.

**B.      A court appointment of a private investigator is inappropriate at this time.**

"The expenditure of public funds on behalf of an indigent litigant is proper only when authorized by Congress." *Santos v. Baca*, Case No. 2:11-cv-01251-KJD-NJK, 2014 WL 12910916,

---

[5]      The parties' Inmate Early Mediation Conference took place prior to service of the disputed discovery requests. ECF No. 40. Therefore, when Plaintiff spoke with Matthew Feeley at this conference, Defendants had not yet received, nor had a chance to respond to, Plaintiff's discovery requests.

*2 (D. Nev. Aug. 19, 2014), *citing Tedder v. Odel*, 890 F.2d 210, 211–12 (9th Cir. 1989). Here, the two potential sources of Congressional authorization are the *in forma pauperis* statute, 28 U.S.C. § 1915, and the Criminal Justice Act, 18 U.S.C. § 3006A. However, "[t]he *in forma pauperis* statute, 28 U.S.C. § 1915, does not authorize the expenditure of funds for a private investigator." *Covarrubias v. Gower*, No. C-13-4611 EMC (pr), 2014 WL 342548, *1 (N.D. Cal. Jan. 28, 2014) (internal citation omitted). In addition, the Criminal Justice Act, 18 U.S.C. § 3006A, does not apply because this is a civil, not a criminal, matter. Therefore, no Congressional authorization exists for the Court to appoint a private investigator.

Accordingly, Plaintiff's Motion to Appoint Private Investigator (ECF No. 108) is denied.

**C.** **Plaintiff has not demonstrated the exceptional circumstances necessary for an appointment of counsel.**

Generally, a person has no right to appointed counsel for Section 1983 claims. *Storseth v. Spellman*, 654 F.2d 1349, 1353 (9th Cir. 1981) (internal citation omitted). However, "[t]he court may appoint counsel under section 1915 . . . under 'exceptional circumstances.'" *Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991). "A finding of exceptional circumstances requires an evaluation of both the likelihood of success on the merits [and] the ability of the petitioner to articulate his claims *pro se* in light of the complexity of the legal issues involved." *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986) (internal citation and quotation marks omitted). Neither of these considerations is dispositive and must be analyzed together. *Id*.

Based on the allegations presented, the Court finds Plaintiff may succeed on some of the merits of his case; however, Plaintiff has demonstrated sufficient writing ability and legal knowledge to articulate his claims. Further, as Defendants point out, "an inability to afford counsel, not having been able to retain counsel, and being imprisoned, do not rise to the level of requiring the appointment of counsel." ECF No. 118 at 3:17–24 (citing *Garcia v. Smith*, No. 10cv1187 AJB(RBB), 2012 WL 2499003, at *4 (S.D. Cal. June 27, 2012)). Whereas the Court is sympathetic to Plaintiff's physical health and acknowledges that Plaintiff is subject to "regulations/rules restricting possession of . . . materials [he] is requesting[,]" neither consideration can be said to constitute an exceptional circumstance faced by *pro se* inmate litigants. ECF No. 108 at 2; *see also*

8

1   *Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir. 2009) (finding district court did not abuse its discretion

2   by declining to appoint counsel for inmate who alleged he was likely to succeed on the merits,

3   suffered from pain limiting his ability to prepare for trial, and denied access to legal documents).

4   Finally, the facts Plaintiff alleges and the issues he raises are not substantially complex. Although

5   discovery may be essential in order for Plaintiff to further develop his claims, the need for such

6   discovery does not necessarily render the issues involved as "complex." "If all that was required to

7   establish successfully the complexity of the relevant issues was a demonstration of the need for

8   development of further facts, practically all cases would involve complex legal issues." *Wilborn*,

9   789 F.2d at 1331. The Court therefore denies Plaintiff's Motion for Appointment of Counsel (ECF

10  No. 109).

### D. Plaintiff fails to demonstrate irreparable harm if his request for injunctive relief is denied.

A preliminary injunction is an "extraordinary and drastic remedy . . . never awarded as of

right." *Munaf v. Green*, 553 U.S. 674, 689–90 (2008) (internal citations omitted). Under the

Supreme Court's four-prong test in *Winter v. Natural Resources Defense Council, Inc.*, "[a] plaintiff

seeking a preliminary injunction [or temporary restraining order] must establish that he is likely to

succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief,

that the balance of equities tips in his favor, and that an injunction is in the public interest." 555

U.S. 7, 20 (2008) (internal citations omitted). Generally, the *Winter* test requires "plaintiff to make

a showing on all four prongs." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th

Cir. 2011). However, "if a plaintiff can only show that there are 'serious questions going to the

merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction

may still issue if the "balance of hardships tips sharply in the plaintiff's favor," and the other two

*Winter* factors are satisfied." *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir.

2013) (citing *id.*).

9

The second *Winter* factor requires a plaintiff to demonstrate likely—not just possible—irreparable harm in order to obtain preliminary injunctive relief.[6] *Interface Operations LLC v. Laungisa*, No. 2:16-CV-280 JCM (CWH), 2016 WL 706192, \*2 (D. Nev. Feb. 22, 2016). "Speculative injury cannot be the basis for a finding of irreparable harm." *In re Excel Innovations, Inc.*, 502 F.3d 1086, 1098 (9th Cir. 2007). Here, Plaintiff fails to establish irreparable harm in the absence of preliminary injunctive relief. Judge Dorsey previously found that the "scant facts" Plaintiff provides are insufficient to support his argument that he is likely to suffer irreparable injury in the absence of preliminary injunctive relief. ECF No. 11 at 4. Not much has changed since Judge Dorsey issued her Order on July 7, 2016. In fact, Plaintiff has now been integrated with GP inmates for more than five years without incident. Further, Plaintiff claims he is in danger of being retaliated against because he "has been told that . . . CO Neilson [sic] will not be on any future escorts, yet he [was]." ECF Nos. 110 and 111 at 5–6. However, the attached Inmate Grievance Report reveals that when it was discovered CO Nielson was on the same transportation vehicle as Plaintiff, NDOC immediately assigned Transport Officer Adam Burnside as an escorting officer and notified the transportation office. ECF Nos. 110 and 111 at 9. During this trip, "Nielson had no conversation with . . . Dryden and no direct contact," and, thereafter, the NDOC Lieutenant ordered that "Nielson [is] not to be involved in any future escorts involving . . . Dryden." *Id*. Plaintiff does not dispute any of these findings. Plaintiff therefore fails to demonstrate likelihood of irreparable harm in the absence of preliminary injunctive relief.

Because Plaintiff fails to satisfy the second prong of the *Winter* test, and Plaintiff must satisfy all four prongs in order to justify imposition of injunctive relief, the Court denies Plaintiff's Motion for Preliminary Injunction (ECF No. 110) and Plaintiff's Motion for Temporary Restraining Order (ECF No. 111).

---

[6] The Court discusses the second *Winter* factor first, because it is dispositive as to whether preliminary injunctive relief shall issue. That is, preliminary injunctive relief may be imposed even if Plaintiff demonstrates "a lesser showing than likelihood of success on the merits [the first *Winter* factor]." *Shell Offshore, Inc.*, 709 F.3d at 1291 (internal citation omitted). However, Plaintiff *must* demonstrate irreparable harm in the absence of preliminary injunctive relief in order for the Court to grant a preliminary injunction or temporary restraining order.

**III.** **CONCLUSION**

Accordingly,

IT IS HEREBY ORDERED that Plaintiff's Motions to Compel Discovery (ECF Nos. 106, 107, 120, 125) are DENIED.

IT IS FURTHER ORDERED that Plaintiff's Motion to Appoint Private Investigator (ECF No. 108) is DENIED.

IT IS FURTHER ORDERED that Plaintiff's Motion for Appointment of Counsel (ECF No. 109) is DENIED.

IT IS FURTHER ORDERED that Plaintiff's Motion for Preliminary Injunction (ECF No. 110) is DENIED.

IT IS FURTHER ORDERED that Plaintiff's Motion for Temporary Restraining Order (ECF No. 111) is DENIED.

IT IS FURTHER ORDERED that Plaintiff's Motion for Leave to File Reply to Defendants' Opposition for a Preliminary Injunction and Temporary Restraining Order (ECF No. 124) is DENIED as moot.

IT IS FURTHER ORDERED that Plaintiff's Motion to Extend Discovery (ECF No. 127) is DENIED as moot.

DATED THIS 10th day of February, 2020.

ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE