UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Bryan Dryden,<br><br>    Plaintiff<br><br>v.<br><br>State of Nevada, et al.,<br><br>    Defendants | Case No.: 2:16-cv-01227-JAD-EJY<br><br>**Order Denying Plaintiff's Motion for Summary Judgment, Granting in Part Defendants' Motion for Summary Judgment, and Referring Case to Magistrate Judge for Settlement Conference**<br><br>[ECF Nos. 134, 137] |

    Pro se plaintiff Bryan Dryden sues two corrections officers for injuries that he claims he sustained while being transported back to prison after a court hearing. The defendants move for summary judgment, arguing that the record contradicts Dryden's account of his injuries and that he cannot establish that a genuine issue of material fact exists as to any of his claims. Dryden also moves for summary judgment, but he primarily uses it as an opportunity to raise issues that he believes are genuinely disputed.

    I construe Dryden's motion as a response to the defendants' motion and not as one for summary judgment, and I deny it. I next grant the defendants' motion as to Dryden's claims against defendant Kenneth Osborn because Dryden does not provide evidence that he was injured by Osborn's conduct or that he suffers physical manifestations from his emotional distress. But genuine factual disputes about the cause of Dryden's injuries preclude summary judgment on Dryden's excessive-force and battery claims against defendant Ted Nielson, so I deny the defendants' motion as to those claims. Finally, I order Dryden and Nielson to a mandatory settlement conference with the magistrate judge.

**Background**

Dryden is serving a sentence at the High Desert State Prison (HDSP) in Nevada for a murder he claims he did not commit. To prove his innocence, Dryden initiated a post-conviction proceeding, arguing that DNA testing of blood at the crime scene would show that he was not the murderer.[1] As part of his post-conviction litigation, Dryden often needed to be transported from HDSP to the Clark County Detention Center (CCDC), where he was held before his court hearings.[2] So, on January 8, 2014, Dryden was taken to the court for a status-check hearing by Osborn, who claims he cannot "recall weather [sic] or not [he] sat in on Dryden's . . . hearing."[3]

After Dryden's status check, Osborn loaded him and several other inmates into a van to take them back to HDSP.[4] Dryden claims that while Osborn was putting him in the van, Osborn loudly proclaimed that Dryden was going to tell the court who was responsible for the murder, wishing Dryden "good luck" and calling him a "rat."[5] Dryden claims that once he was inside the van, the other inmates began yelling at, taunting, and threatening him because they knew he was a "snitch."[6] In response, Dryden began to yell and told Osborn about the threats.[7] So Osborn turned the van around and headed back to CCDC, where Dryden was removed from the van.[8]

---

[1] *See* ECF No. 135-3 at 2, 5–6, 8–11.
[2] *See* ECF No. 135 at 21.
[3] *Id.*
[4] *Id.* at 22.
[5] ECF No. 139 at 18.
[6] *Id.* at 18–19; ECF No. 148-1 at 56.
[7] *See* ECF No. 148-1 at 56–57.
[8] ECF No. 135 at 22.

Nielson, who was nearby with another officer, drove to CCDC to pick up Dryden and take him to HDSP.[9] At some point between the holding cell at CCDC and Dryden's cell at HDSP, Dryden was injured—splitting his eyebrow open and scratching his knees.[10] The parties offer vastly different tales for how Dryden's injuries came about. One story describes a violent beating at the jail in retaliation for Dryden's misunderstood threats.[11] The other describes an accidental fall after Dryden caught his foot on a seatbelt as he got out of the van.[12]

Several rounds of amendment and dismissal have whittled this 2016 civil-rights lawsuit to just six claims: against Osborn, claims for failure-to-protect in violation of the Eighth Amendment, negligence, and intentional infliction of emotional distress; and against Nielson, claims for excessive-force, assault and battery, and intentional infliction of emotional distress. While both sides seek summary adjudication of Dryden's claims, I start with Dryden's motion, in which he does not appear to request summary judgment, but instead a trial on the merits of his claims.

## Discussion

**I.     Dryden's motion for summary judgment [ECF No. 137]**

Summary judgment serves to isolate and dispose of factually unsupported claims or defenses.[13] Dryden does not offer evidence to show that there are undisputed claims for which summary judgment is appropriate. Instead, he argues that several facts are in dispute, which will

---

[9] *Id.* at 29.
[10] *See* ECF No. 152-1.
[11] ECF No. 148-1 at 58.
[12] ECF No. 135 at 29–30.
[13] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

3

require a jury's resolution.[14]  And while Dryden briefly notes that additional discovery is necessary,[15] he does not move to reopen discovery and it appears that he is referring to videos and records that he already unsuccessfully moved to obtain.[16]  So I liberally construe[17] Dryden's motion as a response to the defendants' motion for summary judgment only and not as his own request to end this case, and I deny it.

## II. The defendants' motion for summary judgment [ECF No. 134]

Summary judgment is appropriate when the pleadings and admissible evidence "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[18]  A court should not grant summary judgment when reasonable minds could differ on material facts.[19]  On summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party.[20]  An inference need not be "necessarily the most likely inference or the most persuasive," as long as it is "rational or reasonable."[21]  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from facts are jury functions, not those of a judge."[22]

---

[14] ECF No. 137 at 5.

[15] ECF Nos. 137 at 5, 7; 145; 146; 147.

[16] ECF No. 147.

[17] *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988) (recognizing that pro se pleadings must be liberally construed).

[18] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)).

[19] *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).

[20] *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

[21] *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1542 (9th Cir. 1989) (citation omitted).

[22] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

### A. Dryden fails to show a genuine issue of fact to support his claims for failure to protect, negligence, or intentional infliction of emotional distress.

#### 1. Failure to protect and negligence

The Eighth Amendment protects prisoners from cruel and unusual punishment, which requires prison officials to "take reasonable measures to guarantee the safety of inmates."[23] This includes a "duty" "to protect prisoners from violence at the hands of other prisoners."[24] But not "every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability."[25] To establish a failure-to-protect claim under the Eighth Amendment, a plaintiff must show that "he is incarcerated under conditions posing a substantial risk of serious harm" and that the prison official acted with "'deliberate indifference' to inmate health or safety."[26] Similarly, in Nevada, "prison officials have a specific duty to protect inmates only when they actually know of or have reason to anticipate a specific impending attack."[27] And both the Eighth Amendment and negligence claims require a plaintiff to prove that the official's actions were the actual and proximate cause of his injuries.[28]

Dryden argues that Osborn put him at serious risk of injury when Osborn loudly proclaimed to other inmates in the transport van that Dryden was snitching on a fellow inmate. Osborn moves for summary judgment, arguing that this claim is implausible because he couldn't

---

[23] *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984).

[24] *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (citations omitted).

[25] *Id.* at 834.

[26] *Id.*

[27] *Butler ex rel. Biller v. Bayer*, 168 P.3d 1055, 1064 (Nev. 2007).

[28] *See Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988) (finding that "inmates" "failed to allege facts [that] demonstrate that any particular prison official was the actual and proximate cause of any constitutional violation"); *Bayer*, 168 P.3d at 1063.

5

have known this information about Dryden as it wasn't disclosed at Dryden's status check. He adds that even if he did know Dryden planned to "snitch," he took reasonable measures to mitigate the risk he created when he pulled over and placed Dryden in a separate transport van. And he stresses that Dryden was not injured, despite the other inmates' threats.

Dryden presents evidence to show that a dispute exists over only whether Osborn made the statement.[29] But even assuming Osborn created a risk by labeling Dryden a "rat," Dryden does not offer any evidence that he was injured at the hands of other prisoners.[30] Instead, Dryden argues only that the other inmates threatened to injure him "before [they] ma[de] it back to High Desert."[31] The parties agree that after the uproar in the van started, the officers immediately took the inmates back to the detention center and removed Dryden from the van. They also agree that all of the inmates in the van were restrained and that Dryden was promptly removed from their presence.[32] Based on those circumstances and the fact that Dryden does not present evidence that he was injured by this comment, Dryden has not shown that a genuine

---

[29] *See* ECF No. 139 at 17–19. Osborn's argument that "[h]e would have only heard a very standard and boring hearing" and thus couldn't know that Dryden was "snitching" on another inmate, ECF No. 134 at 18, is belied by the transcript of that hearing, in which Dryden's attorney stated "we have done the request in this case for some DNA retesting" "as well as comparing those samples to what we believe is a DNA profile of an individual who is or at least was in CCDC." ECF No. 148-1 at 88.

[30] *See Morgan v. McDonald*, 41 F.3d 1291, 1294 (9th Cir. 1994) ("Morgan argues that the director should have realized this statement was likely to cause other inmates to retaliate against him. Morgan's complaint contains no allegations that he was ever subjected to retaliation at the hands of his fellow inmates, nor does it provide any basis for inferring Reid was aware that his actions exposed Morgan to a substantial risk of serious harm. Morgan thus failed to state a claim for damages under the Eighth Amendment."). While I acknowledge Dryden's argument in his reply that he has "been attacked" "over the last 6 1/2 years" because inmates think he is a "snitch," ECF No. 160 at 4, his claim is not based on those attacks and he does not provide evidence that they occurred or that they were caused by Osborn's conduct.

[31] ECF No. 160 at 10.

[32] *See* ECF Nos. 148-1 at 56; 135 at 22.

issue of fact exists as to whether Osborn failed "to ensure" Dryden's "reasonable safety."[33]  So I grant Osborn's motion for summary judgment on Dryden's failure-to-protect and negligence claims against him.

### 2. *Intentional infliction of emotional distress*

Dryden seeks to hold the defendants liable for intentional infliction of emotional distress—Osborn for calling him "a snitch" before placing him in a van of other inmates, and Nielson for beating and threatening him.  The defendants move for summary judgement on this claim, arguing that Dryden cannot provide evidence that he "suffered some physical manifestation" of his distress.[34]  To establish a claim for intentional infliction of emotional distress in Nevada, the plaintiff must prove, among other elements, causation and severe or extreme emotional distress.[35]  This requires some "objectively verifiable indicia of the severity of [the plaintiff's] emotional distress."[36]  Although Dryden offers a list of the injuries he sustained, he does not provide any evidence of his emotional distress.  Because Dryden has failed to present evidence that creates a genuine issue of fact about whether he has suffered severe or extreme emotional distress from the defendants' conduct, I grant summary judgment in favor of both defendants on this claim.

### B. **Genuine issues of fact exist about whether Nielson's force was excessive.**

In the prison context, to state a claim for excessive force, the plaintiff must show that a prison official used force "maliciously and sadistically . . . to cause harm" and not "in a good-

---

[33] *Farmer*, 511 U.S. at 844.

[34] ECF No. 134 at 19, 21.

[35] *Miller v. Jones*, 970 P.2d 517, 577 (Nev. 1998) (citing *Posadas v. City of Reno*, 851 P.2d 438, 444 (Nev. 1993)).

[36] *Id.*

faith effort to maintain or restore discipline."[37] And in Nevada "[a] battery is an intentional and offensive touching of a person who has not consented to the touching."[38] While Dryden bases his excessive-force and battery claims against Nielson on injuries he claims he sustained when he got back to HDSP from his hearing, the parties offer different stories of how Dryden got those injuries.

According to Dryden's declaration, after the commotion in the first van, he was removed from the vehicle and placed in a holding cell at CCDC before Nielson and another officer arrived to take him back to HDSP.[39] Dryden claims that when they arrived at HDSP, Nielson grabbed Dryden by his arm and hair, bounced him off the van door, and then slammed Dryden's face into plexiglass.[40] He adds that Nielson then threw Dryden into a holding cell and slammed him onto the ground, scratching his knees.[41] Dryden also offers a declaration from another inmate, Davin Cooper, who was in the initial transport van.[42] Cooper declares that when the inmates were put into the first transport van, Nielson arrived in the second van.[43] He claims that he saw Nielson grab Dryden "by the hair and jumpsuit and pull[] [Dryden] out of the van" before Nielson "rammed [Dryden's] head into the van."[44]

---

[37] *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (citations omitted).

[38] *Humboldt Gen. Hosp. v. Sixth Jud. Dist. Ct.*, 376 P.3d 167, 171 (Nev. 2016) (citation omitted).

[39] ECF Nos. 148-1 at 57; 139 at 19.

[40] ECF Nos. 148-1 at 58; 139 at 20.

[41] ECF No. 139 at 20–21.

[42] *Id.* at 13.

[43] *Id.*

[44] *Id.* Although Dryden attaches one of his declarations to a separate motion, he references it in his motion for summary judgment, ECF No. 137 at 12, which I construe as a response to the defendants' motion. Even if I were to ignore Dryden's declaration as improperly attached, he still meets his burden to show a genuine issue of fact exists based on Cooper's declaration.

8

Nielson's explanation is that he was helping Dryden avoid injury. In his declaration, Nielson claims that as Dryden stepped out of the van back at HDSP, Dryden "caught his foot on a seatbelt" causing him to fall.[45] Nielson maintains that though he "was able to partially catch Dryden" and "prevent[] Dryden's head from hitting the ground," Dryden still "hit his head against the door and fell."[46]

The parties' conflicting versions of events leave genuine issues of fact about whether Nielson used excessive force. The Ninth Circuit has cautioned against granting summary judgment on excessive-force claims because "balancing nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom . . . ."[47] While the Ninth Circuit has laid out factors to determine whether force was excessive, when "material questions exist regarding the circumstances of the [incident]" the court need not consider whether conduct is objectively reasonable.[48] Dryden has produced evidence from which a reasonable jury could find that his injuries were caused by Nielson using excessive force—a tale at odds with Dryden merely tripping and falling out of a van. This factual dispute also precludes summary judgment on Dryden's battery claim. While a jury may have trouble believing Dryden's version of the story, assessing his or Cooper's credibility at this point is not a job for the court. So I deny the defendants' motion for summary judgment on Dryden's excessive force and battery claims against Nielson.

---

[45] ECF No. 135 at 29.

[46] *Id.*

[47] *Drummond ex rel. Drummond v. City of Anaheim*, 343 F.3d 1052, 1056 (9th Cir. 2003); *Liston v. Cnty. of Riverside*, 120 F.3d 965, 976 n.10 (9th Cir. 1997).

[48] *See Ting v. United States*, 927 F.2d 1504, 1510 (9th Cir. 1991).

**Conclusion**

IT IS THEREFORE ORDERED that Dryden's motion for summary judgment [**ECF No. 137] is DENIED**.

IT IS FURTHER ORDERED that the defendants' motion for summary judgment **[ECF No. 134] is GRANTED IN PART**. Summary judgment is granted in favor of the defendants against Dryden on his claims against Osborn. **The Clerk of Court is directed to TERMINATE Osborn as a defendant in this action** as no claims remain against him. The motion is denied in all other respects. This case proceeds on Dryden's claims for excessive force and assault and battery against Nielson only.

IT IS FURTHER ORDERED that **this case is referred to the Pro Bono Program** adopted in General Order 2016–02 for the purpose of screening for financial eligibility (if necessary) and identifying counsel willing to be appointed as counsel for Plaintiff Bryan Dryden at no expense to him. The scope of appointment will be for all purposes through conclusion of trial. By referring this case to the Pro Bono Program, I am not expressing an opinion on the merits of the case. The **Clerk of Court** is directed to forward this **order to the Pro Bono Liaison**.

IT IS FURTHER ORDERED that this case is **REFERRED to the magistrate judge for a mandatory settlement conference between Nielson and Dryden**. The parties' obligation to file their joint pretrial order is STAYED until 10 days after that settlement conference.

_____
U.S. District Judge Jennifer A. Dorsey
February 25, 2021