UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

BRYAN DRYDEN,

                    Plaintiff,

          v.

STATE OF NEVADA, *et al.*,

                    Defendants.

Case No. 2:16-cv-01227-JAD-EJY

**ORDER**

Pending before the Court is Plaintiff Bryan Dryden's Motion for Order to Show Cause (ECF No. 191), Defendant's Response (ECF No. 193), and Plaintiff's Reply (ECF No. 194). The Court reviewed the relevant filings and finds as follows.

**I.     Background**

On June 6, 2016, Plaintiff filed his civil rights Complaint against numerous individuals associated with High Desert State Prison ("HDSP") arising from injuries he suffered while being transported between Clark County Detention Center and HDSP. ECF No. 191 at 1-2. As of the date of this Order only one Defendant remains—Officer Ted Nielson. Plaintiff claims that in 2014, Officer Nielson "repeatedly slammed his face against hard surfaces including the transport van." *Id.* at 2. Nielson responds that these injuries occurred when Plaintiff tripped and fell on a seatbelt. *Id.*

After the Court reopened discovery, Plaintiff's counsel, Justin V. Alper, served a Request for Production of Documents ("RFP") on Defendant. *Id.* Among other documents requested, Plaintiff asked Defendant to produce officer reports and medical reports related to the 2014 transport incident. *Id.* In response, Defendant produced a series of Bates-stamped paper documents from the Attorney General's Office (sometimes the "AGO") including the Unusual Occurrence Report (the "Report") Nurse Cindy Castillo[1] prepared in response to the 2014 incident. *Id.* at 2-3.

Upon learning he could directly order Plaintiff's entire medical file from the Nevada Department of Corrections ("NDOC"), Mr. Alper obtained the Plaintiff's file from records employee

---

[1]     Formerly Nurse Cindy Manjeshwar.

Geraldine Worthy on February 10, 2022. *Id.* at 3. Among the documents in that file was a version of Nurse Castillo's Report that Plaintiff contends is the original. *Id.* At Castillo's deposition, she authenticated the version of the document in the records obtained from the medical records office ("Plaintiff's Version"). *Id.* at 3-4. While Castillo was reading the Report aloud, Defendant's then-counsel Deputy Attorney General ("AG") Bailey interjected stating that the version of the document Castillo was reading did not match the document in his possession; that is, the version Defendant produced in response to Plaintiff's RFP ("Defendant's Version"). *Id.* at 4. A side-by-side comparison of the two versions revealed that Plaintiff's Version of the Report dedicated to Plaintiff's subjective account of the incident includes the three words italicized here: "I hit my head against the plexiglass someone pushed me I upset a C.O. *who assaulted me*." *Id.* Defendant's Version, which Deputy AG Bailey had in front of him at the deposition, was missing the italicized word "who assaulted me" and instead states only: "I hit my head against the plexiglass someone pushed me I upset a C.O." *Id.* Mr. Alper called Castillo after the deposition and Castillo re-authenticated Plaintiff's Version of the document that includes the words "who assaulted me." *Id.* at 6.

Thereafter, Mr. Alper states he repeatedly asked Deputy AG Bailey for the name of the AGO employee who handled Defendant's Version of the document receiving no response. *Id*. On May 23, 2022, the attorneys ultimately held a three hour, unsuccessful meet and confer. *Id*. at 7. During the call, Deputy AG Bailey explained that his assistant Robin Carlson processed and Bates stamped the document, but that he had no idea how Ms. Carlson obtained the document. *Id.*[2]

Plaintiff alleges the words "who assaulted me" were whited out with a fine-tipped pen or through some other method in Defendant's Version of the Report, that the document Plaintiff obtained from the records office containing these words is the original version of the Report, and that Defendant's discrepancy was an intentional effort to "make it appear that Dryden never mentioned to the nurse that he was assaulted by a corrections officer." *Id.* at 4. Plaintiff notes "that the two-hole punch shadows on the top" of Defendant's Version are noticeably darker than on Plaintiff's Version, Defendant's Version "has dark shading near the bottom left of the paper which

---

[2]     Deputy AG Bailey also states that Plaintiff's Version was delivered by FedEx from the medical record's office in June of 2020, but that AGO policy is to re-order documents requested during discovery.

resemble folds," and that Plaintiff's Version "has a total of four horizontal copy streaks, while [Defendant's Version] has a total of six horizontal copy streaks." *Id.* at 6. Plaintiff argues these differences "appear to indicate that [Defendant's Version] is a later generation document." *Id.* at 6.

Plaintiff asks the Court to find Defendant engaged in willful discovery misconduct and issue appropriate sanctions under Rule 37(c) of the Federal Rules of Civil Procedure including entering default judgment in Plaintiff's favor. *Id.* at 9; Fed. R. Civ. P. 37(c). Plaintiff's Motion also asks the Court to hold a hearing requiring Deputy AG Bailey and his assistant Robin Carlson to appear and explain to the Court how the allegedly tampered document came into their possession. *Id*. at 9.

**II.   Discussion**

A.   <u>The Parties' Arguments</u>.

Courts have the power to impose a range of sanctions on a defendant for willful discovery misconduct including entering default judgment in favor of the non-offending party after considering five factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to [the party seeking sanctions]; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Haines v. Get Air LLC*, Case No. CV-1500002-TUC-RM-EJM, 2018 WL 5020479, at *5 (D. Ariz. July 30, 2018), *quoting Wanderer v. Johnston*, 910 F.2d 652, 656 (9th Cir. 1990). "[T]he public policy favoring disposition of cases on their merits strongly counsels against" case dispositive sanctions. *On Demand Direct Response, LLC v. McCart-Pollak*, Case No. 2:15-cv-01576-MMD-NJK, 2018 WL 3060524, at *5 (D. Nev. Apr. 20, 2018), report and recommendation adopted, Case No. 2:15-cv-01576-MMD-NJK, 2018 WL 3058866 (D. Nev. June 19, 2018). Further, before imposing case dispositive sanctions, courts must consider the availability of lesser sanctions. *Id.* Finally, case dispositive sanctions are only appropriate where a defendant's conduct is shown to be the result of "willfulness, fault, or bad faith." *Id.*

Plaintiff argues case dispositive sanctions are appropriate because Defendant produced a false document and "refused to disclose the source." ECF No. 191 at 9. Plaintiff argues the public's interest in the expeditious resolution of litigation and managing the Court's docket will be served by entering judgment against Defendant as this will dispose of the case. *Id.* Plaintiff argues sanctions

will cure the risk of prejudice to Plaintiff associated with the alteration of the Report because the alteration materially affects the meaning of the Report and, therefore, adversely affects Plaintiff's claims. *Id.* at 10. Plaintiff also argues the alteration "unjustly enhance the defenses" available to Defendant by allowing Defendant to falsely imply that Plaintiff never mentioned an officer assault to the nurse on the day of his injuries. *Id.* at 10. Plaintiff argues public policy favoring disposition of the case on the merits supports issuing case dispositive sanctions because Defendant's alleged actions "shows a severe disregard for the legal process …, and any hearing on a default judgment would be held with more fairness than the defense has shown to its opposing party…." *Id.* Plaintiff argues against imposing lesser sanctions because drastic sanctions are needed to deter Defendant from producing tampered documents in the future. *Id.*

Plaintiff imputes bad faith to Defendant for producing an allegedly tampered document and refusing to disclose the document's source over a period of four weeks. *Id.* at 11. Plaintiff accuses Defendant of "acting with willful disregard for the rights of the Plaintiff to investigate the matter" and generally highlights the seriousness of tampering with discovery documents. *Id.* Plaintiff states that "a party who produces a document that has been deliberately altered by whiteout pen or other artifice has produced a document that was willfully manipulated by trickery." *Id.*

In response, Defendant asks the Court to deny Plaintiff's Motion because Plaintiff cannot establish which version of the document is the original and which is the altered copy. ECF No. 193 at 1. Defendant states that even setting this aside, Plaintiff cannot demonstrate Defendant acted in bad faith. *Id.* Defendant represents the AGO is currently investigating "a credible theory that [Plaintiff] added the language 'who assaulted me' after gaining access to his medical records at … HDSP … in April 2020." *Id.* To support this theory, Defendant points to a 2018 version of the disputed document saved to the AGO electronic systems, in 2018, which does *not* contain the added language. *Id.* Defendant represents Plaintiff was granted access to the 2018 version of the Report on May 4, 2020, and the AGO "received Dryden's medical records via FedEx on June 5, 2020." The version of the Report within the FedEx package *does* contains the language "who assaulted me." *Id.* at 4. Defendant adds that another version of the Report was scanned into the AGO's case management software on November 9, 2021, without the additional language—this version was

produced in response to Plaintiff's discovery request. *Id.* The AGO maintains no knowledge of the document's origins and informs the Court it is "currently conducting a formal investigation of this matter, including the credible theory that Dryden altered the original document himself." *Id.* at 5. Deputy AG Bailey states he provided all known information to Plaintiff during his teleconference with Mr. Alper. *Id.*

Defendant concludes that Plaintiff fails to allege the requisite bad faith for awarding case dispositive sanctions and otherwise fails to establish the appropriateness of such sanctions under the Ninth Circuit's five-part test. *Id.* at 6; *see also Haines*, 2018 WL 5020479, at *5. Defendant cites *Computer Task Group, Inc. v. Brotby*, 364 F.3d 1112, 1115 (9th Cir. 2004), discussing the test used by courts to assess whether case dispositive sanctions are appropriate. Defendant argues that while it is true that the first and second factors of the test favor sanctions when a court order is violated, no court order was violated here. ECF No. 193 at 6. Defendant further argues that "[t]he outcome of the investigation will determine upon whom a delay in the expeditious resolution of this litigation falls." *Id.* With respect to the Court's need to manage its docket, Defendant repeats that Plaintiff "has not proven that" his version of the disputed document is the true and correct copy. *Id.* Defendant argues Plaintiff's Motion for Sanctions is premature in light of the investigation. *Id.*

With respect to risk of prejudice to Plaintiff if sanctions are denied, Defendant contends Plaintiff fails to persuasively allege what prejudice he faces by having to bring his case to a jury. *Id.* at 7. Defendant argues Plaintiff may bring whichever document he chooses before a jury, subject to the rules of evidence, and that Plaintiff discovered the difference between the two documents in ample time (approximately four months ago) to address the discrepancy at trial. *Id.* Further, Defendant maintains, depending on the results of its investigation, he "will not seek to admit the incorrect version of the document into evidence." *Id.* Defendant states the discrepancy cannot affect his credibility at trial because he was not in the chain of custody when the documents were produced. *Id.* Arguing whether the public policy of deciding cases on the merits warrants sanctions, Defendant points to inconsistencies in Plaintiff's account of the alleged assault, including Plaintiff's different accounts of where the alleged assault took place. *Id.* at 8. Defendant argues part of resolving the case on the merits includes determining whether Plaintiff altered the document, which strongly cuts

against granting case dispositive sanctions. *Id.* Thus, Defendant argues imposing sanctions on either party is premature and the parties should be able to proceed to trial on the merits. *Id.* Finally, Defendant argues that the availability of less drastic sanctions that would adequately address the alleged misconduct. These sanctions include allowing further discovery and imposing cost and/or fines on Defendant. *Id.* Defendant stresses he has not been previously sanctioned or threatened with sanctions and that the investigation into the issue is ongoing. *Id.* at 9.

Finally, Defendant argues the record does not support a finding of bad faith, willfulness, or fault by the AGO or Defendant sufficient to justify case dispositive sanctions. *Id.* Defendant emphasizes that neither party noticed the discrepancy between the two documents prior to the deposition and the transcript supports that Deputy AG Bailey was clearly caught off guard once the discrepancy was discovered. *Id.* The Deputy Attorney General claims he took every reasonable measure to investigate the discrepancy and "communicated openly with Dryden regarding the matter." *Id.* at 10.

In his Reply, Plaintiff argues Defendant's theory that Plaintiff altered the document is conjecture, and stresses the lack of transparency on the AGO's part. ECF No. 194 at 2. Plaintiff reiterates Deputy AG Bailey informed Plaintiff's counsel during their phone call that he did not know how his assistant, Robin Carlson, obtained Defendant's Version of the document, but that this information could probably be discovered in the next day or two. *Id.* Plaintiff alleges his Motion was necessary because Deputy AG Bailey failed to follow up as promised and nine days later Plaintiff had heard nothing from the AGO. *Id.* Plaintiff adds that, on June 15, 2022, after filing this Motion, Deputy AG Bailey was replaced by Austin Barnum who informed Plaintiff's counsel of the investigation and the AGO's theory that it was Plaintiff who altered the document. *Id.* Plaintiff points out, however, that the version of the Report containing the additional language was authenticated by Castillo on two occasions. *Id.*

With respect to Defendant's contention that there is a version of the Report from 2018 in the AGO's electronic filing system that does not contain the additional language, Plaintiff criticizes the defense for failing to "indicate how or by what means they came to possess the [2018] version that's missing the assault language" as well as for omitting this information during the parties' three hour

meet and confer phone call.  *Id.* at 5.  Plaintiff states that "[w]hen discovery was reopened in the Fall of 2021, by their own admission[,] the AGO was in possession of two different versions of the same document and failed to disclose this to Mr. Alper.  Conveniently, the AGO then produced the version that is more favorable to them which is missing any mention of officer assault."  *Id.*  Finally, Plaintiff adds that Defendant and the AGO initially agreed to allow Mr. Alper to attend the viewing of the physical copy of the document at HDSP, where the medical records are stored, but that the AGO failed to stand by its agreement.  *Id.* at 6.  For these reasons, Plaintiff contends that Defendant's arguments should be rejected and the Court should require Robin Carlson, David A. Bailey, and Austin Barnum to appear to offer an explanation.

> B.    <u>Case Dispositive Sanctions Cannot Be Awarded Based On The Present Record</u>.

Although Plaintiff raises numerous credible questions as to whether the AGO produced an altered document, the Court finds the answers to these questions—specifically, what happened and how events led to two versions of the Report—remain unresolved.  Thus, it is premature to determine what sanctions, if any, are appropriate.   While Plaintiff argues that the version of the Report including the language regarding an assault by Defendant was authenticated twice by Castillo, Defendant is currently investigating whether Plaintiff "added the language 'who assaulted me' after gaining access to his medical records."  ECF No. 193 at 1.  And, even if the Court were to assume the version of the document containing the assault allegation is correct, more information is needed to understand the factual circumstances surrounding Defendant's acquisition and production of the document that fails to contain this language.

The Court's decision not to grant Plaintiff's request for case dispositive sanctions at this time is supported by the Ninth Circuit's five-part test.  *Haines*, 2018 WL 5020479, at *5.  Considering the public's interest in expeditious resolution of litigation and the Court's need to manage its docket, the undersigned must determine if the Report was altered (albeit it appears so) and if so, by whom it was altered.  Without resolution of these issues, the Court cannot know whose conduct delayed the resolution of this case and who, if anyone, should be sanctioned.

The allegations made by Plaintiff are serious.  The evidence and arguments made in support of sanctions are strong.  However, the record also reflects that Deputy AG Bailey was not aware of

the discrepancy between the two versions of the Report before Castillo's deposition.  This does not absolve the AGO of wrongdoing entirely, but certainly this fact leaves questions regarding whether to enter case dispositive sanctions.

**III.     ORDER**

Accordingly, IT IS HEREBY ORDERED that the Court will hold an evidentiary hearing at which the parties may present witnesses, documents, and argument regarding Plaintiff's allegations and the defense and responses thereto.  In order to facilitate the setting and parameters of such a hearing, the Court sets a calendar call for **July 19, 2022 at 10:00 a.m.** in Courtroom 3A.  Counsel for the parties **must** be present in person.

DATED this 11th day of July, 2022.

_____
ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE