UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| BRYAN DRYDEN, | Case No. 2:16-cv-01227-JAD-EJY |
| Plaintiff, | |
| v. | **ORDER** |
| STATE OF NEVADA, *et al.*, | |
| Defendants. | |

Pending before the Court is Plaintiff's Motion for Order to Show Cause (ECF No. 191), Defendant's Response (ECF No. 193), and Plaintiff's Reply (ECF No. 194).[1] On October 11, 2022, the Court held an evidentiary hearing to consider evidence submitted by the parties. ECF No. 214.[2] In lieu of closing arguments, the Court ordered closing briefs to be filed.[3]

Also pending before the Court is Defendant's Countermotion for Sanctions (the "Sanctions Motion") (ECF No. 209). The Court has considered the Sanctions Motion, Plaintiff's Response (ECF No. 219), and Defendant's Reply (ECF No. 221).

**I.     RELEVANT BACKGROUND**

On July 11, 2022, after considering Plaintiff's Motion for Order to Show Cause and related filings, the Court found the information presented was insufficient to allow an informed decision on the issue presented—the alleged alteration of an Unusual Occurrence Report (sometimes the "Report") by a Nevada Department of Corrections ("NDOC") employee. ECF No. 195 at 7. Citing the seriousness of the allegations made by Plaintiff, the Court ordered an Evidentiary Hearing be held on October 11, 2022. ECF No. 208.

Nine witnesses appeared at the evidentiary hearing including four for Plaintiff and five for Defendant. Subsequently, Defendant filed his Sanctions Motion alleging Plaintiff's actions warrant

---

[1] While the matter originally included several defendants, there is now only one: High Desert State Prison Corrections Officer Ted Nielson.
[2] The Transcript of Proceedings for the October 11 evidentiary hearing is found at ECF No. 220.
[3] Plaintiff's closing brief is found at ECF No. 224. Defendant's closing brief is found at ECF No. 223.

1

case terminating sanctions because Plaintiff's accusations that an NDOC or a Nevada Attorney General (sometimes the "Attorney General" or "NAG") employee tampered with the Unusual Occurrence Report is unfounded.  ECF No. 209 at 1.

After reviewing all the evidence and arguments presented, the Court finds, as discussed more fully below, that Plaintiff did not meet his burden of demonstrating Defendant should be sanctioned.  The evidence does not support the tampering accusation.  The Court also finds Defendant's request for sanctions is not supported by evidence establishing Plaintiff altered the Unusual Occurrence Report or that he acted in bad faith in bringing his Motion for Order to Show Cause.  Both Motions are denied.

Plaintiff's civil rights complaint alleges Defendant Nielson attacked him on January 8, 2014, "slamming" Plaintiff into several surfaces and items at both the Clark County Detention Center ("CCDC") and High Desert State Prison ("HDSP") causing him "severe facial lacerations."  ECF No. 35 at 12-14.  Cindy Castillo ("Castillo"), a nurse employed by NDOC at HDSP, treated Plaintiff soon after his arrival at the prison following transport from CCDC.  *Id.* at 8.  Castillo completed an Unusual Occurrence Report, which she does whenever there is something "unusual …, there's something that has happened or if someone is injured …."  ECF No. 220 at 17:22 – 18:3.  The Unusual Occurrence Report at issue in this case is dated the same day as Plaintiff alleges he was attacked by Defendant; that is, January 8, 2014.  ECF No. 191-1 at 3.[4]

At Castillo's April 26, 2022 deposition she was shown the Unusual Occurrence Report, which she authenticated as in her handwriting.  ECF No. 220 at 16:23 – 17:3.  That Report appeared to confirm Plaintiff reported the assault by Nielson to Castillo upon his arrival at HDSP as the Report includes Castillo's handwritten statement, as reported by Plaintiff, that: "I hit my head against the plexiglass[.] [S]omeone pushed me[.]  I upset a CO[] who assaulted me."  ECF Nos. 191 at 3; 220 at 17:1-3; 19:11-15; 20:1-8, 17-19.  However, during deposition Castillo was asked to read from the Report, and defense counsel discovered his copy of the Report did not match the version from which Castillo read.  *Id.* at 71:23 – 72:4.  Thereafter, the parties confirmed they had two different versions

---

[4] Castillo explained at the Hearing that the date indicating 2013 was a typographical error.  The correct date is 2014.  ECF No. 220 at 19:2-8.

2

of the Report. *Id.* at 5. Plaintiff's copy of the Report, received through discovery from the NAG's Office, contained the words "who assaulted me," while the Deputy Attorney General's copy of the Report did not contain those words. *Id.*

Ultimately, Plaintiff filed his Motion for Order to Show Cause because the Nevada Attorney General's Office could not explain the discrepancy between the two versions of the Report. *Id.* at 12. Plaintiff, who had twice confirmed with Castillo that the handwriting on the Report was hers—first at her deposition and second in a subsequent phone call[5]—came to the only conclusion that made sense to him; that is, that someone at NDOC or the NAG's Office had altered the document. ECF No. 219 at 12.

The Evidentiary Hearing cast serious doubt on Plaintiff's conclusion prompting Defendant to file his Sanctions Motion alleging Plaintiff altered the Unusual Occurrence Report to add the words "who assaulted me." ECF No. 209. Defendant alleges Plaintiff knew he unlawfully tampered with evidence and was acting in bad faith in an attempt to manipulate the record in order to prevail in his case. *Id.* at 3.

## II.   EVIDENTIARY HEARING

The October 11, 2022 Evidentiary Hearing included testimony by three witnesses who are key to the Court's findings.[6] Their testimony is summarized below.

### A.   Cindy Castillo.

After being sworn in, providing her background, and confirming her practice of completing Unusual Occurrence Reports when an inmate is injured and there is something strange about the circumstances of the injury, Castillo, who had twice before confirmed the handwriting on the Report was hers, backtracked claiming she could not be sure the words "who assaulted me" were written by

---

[5] ECF No. 220 at 19:13-15; 20:21 – 30:8.
[6] Several additional witnesses testified and while they gave credible testimony, their testimony does not impact the Court's analysis. Plaintiff called David Bailey, the deputy attorney general at the time Castillo was deposed, was unable to explain the differences between the two versions of the Report. Robin Carlson, a paralegal with the NAG's Office, was called to testify to the origins of the version of the Report in Mr. Bailey's possession at the April 26, 2022 deposition. She could not do so. Defendant called Jaymie Cabrera to testify to dimensions of the HDSP medical wing where Plaintiff twice reviewed his medical records. Defendant called Hillery Pichon and Chris DeFonseka to supplement Corey Cluckey's testimony about the information systems used by the Attorney General's Office. Finally, Defendant also called Kathy Carlson, a handwriting expert, who opined that the probable author of the phrase "who assaulted me" was Plaintiff. While credible, Ms. Carlson's testimony was not persuasive.

3

her. *Id.* at 24:25 – 25:2; 25:9-11; 25:22 – 26:10; 29:20 – 30:8; 31:6 – 32:24. More specifically, Castillo testified that when she was called by Plaintiff's counsel while at work she was unable to carefully scrutinize the document. Castillo testified that now that she examined the handwriting on the Report more closely, she no longer was sure the words "who assaulted me" were in her handwriting. Despite efforts to get Castillo to testify one way or the other whether she wrote the words "who assaulted me," Castillo could not and would not do so. *Id.* at 42:2 – 44:9.

### B.   Plaintiff Bryan Dryden.

Plaintiff described the events of January 8, 2014, when he was allegedly assaulted by Defendant Nielson. *Id.* at 137:12-21; 138:7-21. Plaintiff also described his interaction with Castillo, including her completion of the Unusual Occurrence Report, a copy of which she gave to an unnamed prison officer and the original of which she kept for her records. *Id.* at 139:20 – 142:11. Plaintiff admitted he twice reviewed the Unusual Occurrence Report (once in May and a second time in June 2020) and that the phrase "who assaulted me" appeared on the Report on both occasions. *Id.* at 149:5-15; 151:7-13. Plaintiff testified that he was never alone with the Report, but was surrounded by NDOC employees at all times in May and June 2020. *Id.* at 154:8-14; 156:1-9; 164:17 – 165:12. Plaintiff denied tampering with or asking anyone else to tamper with the Report. *Id.* at 154:8-14; 156:1-9; 164:17 – 165:12. When asked by the Court, Plaintiff stated he was not in possession of a pen during his May 2020 review, but thinks he had access to a pen during his June 2020 review of the Report. *Id.* at 166:7-18.

### C.   Corey Cluckey.

Corey Cluckey ("Cluckey") is a criminal investigator employed by the Nevada Attorney General's Office. *Id.* at 282:21-23. Cluckey testified that on June 15, 2022, he was asked to conduct an investigation into a discrepancy in the Unusual Occurrence Report. *Id.* at 283:3-11. Cluckey produced a report that was admitted into evidence by stipulation. *Id.* 131:23 – 132:24. Cluckey's testimony confirmed the following:

- He initially searched for a scanned version of the Unusual Occurrence Report in ProLaw, the electronic case management system on which the NAG maintains records and documents associated with cases being handled by the Attorney General's Office[7];

---

[7]   *Id.* at 283:18 – 284:7.

4

- He then searched for all instances in which Plaintiff's name, Bryan Dryden, appeared in the Attorney General's records[8];
- Plaintiff's name was flagged eight times[9];
- Cluckey reviewed each of those flags—files—in search of the Unusual Occurrence Report[10];
- In each file there was "a complete running list of all of the different documents or notes, dockets, all of those items"[11];
- In one file Cluckey found a copy of the Unusual Occurrence Report dated March 5, 2018. That copy did *not* contain the words "who assaulted me." When questioned, Cluckey confirmed the March 2018 copy of the Report was sent, upon request, by employees at NDOC to the Attorney General's Office using FedEx shipping[12];
- Cluckey referenced a second ProLaw file that also contained a copy of the Unusual Occurrence Report saved on January 3, 2020. This copy of the Report also did *not* contain the words "who assaulted me." This Report was part of an entire medical record for Plaintiff requested by NAG from HDSP[13];
- Cluckey testified to a third ProLaw file in which he found three copies of the Unusual Occurrence Report. The copies saved and dated November 23, 2021, did *not* contain the phrase "who assaulted me"[14];
- Cluckey also found a version of the Unusual Occurrence Report in the share drive used by employees at the Attorney General's Office. This version, dated August 6, 2018, did *not* contain the words "who assaulted me"[15];
- Cluckey traced the version contained in the share drive and found that it had been sent by NDOC to a legal researcher in the Attorney General's Office[16];
- Cluckey concluded that he "strongly disagreed with [Plaintiff's Counsel's] conclusion that this had been something that was -- that that phrase 'who assaulted me' had been removed instead of added." Cluckey found seven instances of the Unusual Occurrence Report in ProLaw. By January 2020, the Unusual Occurrence Report had at least six hole punches and that version still did not contain the words "who assaulted me"[17];
- Cluckey confirmed that June 4, 2022 was the first time he located a copy of the Unusual Occurrence Report on which the phrase "who assaulted me" appeared.[18]

### III. DISCUSSION

#### A. Case Dispositive Sanctions Are Not Appropriate Here Against Either Party.

Spoliation is a serious allegation that the Court must carefully analyze. Spoliation is defined as:

> the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation. . . . A party must preserve evidence it knows or should know is relevant to a claim or defense by any party, or that may lead to the discovery of relevant

---

[8] *Id.* at 284:11-16.
[9] *Id.*
[10] *Id.* at 284:17-19.
[11] *Id.* at 286:10 – 287:3.
[12] *Id.* at 287:19 – 289:7.
[13] *Id.* at 293:1-14; 294:18-23; 295:4 – 296:15.
[14] *Id.* at 298:5 – 300:11.
[15] *Id.* at 301:14 – 302:11.
[16] *Id.* at 302:12 – 303:12.
[17] *Id.* at 306:4-24.
[18] *Id.* at 306:25 – 307:1.

>   evidence. . . . The duty to preserve arises not only during litigation, but also extends to the period before litigation when a party should reasonably know that evidence may be relevant to anticipated litigation.

*Gonzalez v. Las Vegas Metropolitan Police Dept.*, Case No. 2:09-cv-00381-JCM-PAL, 2012 WL 1118949, at *5 (D. Nev. Apr. 2, 2012) (internal citations omitted).[19] "To be actionable, the spoliation of evidence must damage the right of a party to bring an action." *Ingham v. U.S.*, 167 F.3d 1240, 1246 (9th Cir. 1999) (internal citation omitted).  "The party seeking spoliation sanctions has the burden of establishing the elements of a spoliation claim … The party seeking sanctions based on the spoliation of evidence must establish that: (1) the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) the evidence was destroyed with a culpable state of mind; and (3) the evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense … The threshold inquiry, of course, is whether or not evidence was actually altered or destroyed." *Harfouche v. Stars on Tour, Inc.*, Case No. 2:13-cv-00615-LDG-NJK, 2016 WL 54203, at *3 (D. Nev. Jan. 5, 2016) (internal citations omitted).  The burden on the party seeking spoliation is by a preponderance of the evidence.  *U.S. E.E.O.C. v. Wedco, Inc.*, Case No. 3:12-cv-00523-RCJ-VPC, 2014 WL 4635678, at *2 (D. Nev. Sept. 15, 2014) (citation omitted).  Before a court imposes case terminating sanctions, five factors must be considered: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to [the party seeking sanctions]; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Wanderer v. Johnson*, 910 F.2d 652, 656 (9th Cir. 1990) (citations omitted).

However, before considering the tools the Court has at its disposal to issue sanctions, it must make a finding that Plaintiff and Defendant, in their respective positions as movants, have proven by a preponderance of the evidence that the other party actually destroyed, altered, or failed to

---

[19] In his Motion for an Order to Show Cause, Plaintiff alleges the version of the Unusual Occurrence Report in Defendant's counsel possession during the April 26, 2022 deposition was "tampered with." ECF No. 191. Plaintiff can assert a Fourteenth Amendment due process claim if there is reasonable evidence that there was nefarious tampering with evidence by a party.  *Aziz v. Leach*, Case No. 2:17-cv-06934 DSF (AFM), 2020 WL 7080394, at *17 (C.D. Cal. Oct. 21, 2020).  However, in this case, Plaintiff's evidence tampering allegations are brought under Federal Rule of Civil Procedure 37.  ECF No. 191 at 8.  A finding by this Court that tampering occurred could allow the imposition of sanctions.  *Montoya v. Orange County Sheriff's Dept.*, Case No. SACV 11–1922 JGB (RNBx), 2013 WL 6705992, at *13 (C.D. Cal. Dec. 18, 2013), *quoting Pension Committee of University of Montreal Pension Plan v. Banc of America Securities*, 685 F.Supp.2d 456, 469 (S.D.N.Y. 2010).

preserve relevant evidence. *Harfouche*, 2016 WL 54203 at *3. The Unusual Occurrence Report at issue here is potentially relevant evidence demonstrating Plaintiff's alleged contemporaneous account of Defendant's assault. The evidence would assist a trier of fact when determining the validity of Plaintiff's civil rights claims against Defendant. *Id.* Similarly, the absence of the phrase would aid Defendant in refuting Plaintiff's allegations as Defendant could point to a lack of a contemporaneous accusation.

Plaintiff theorizes that the phrase "who assaulted me" was whited out on the original Unusual Occurrence Report by someone associated with Defendant. ECF No. 191 at 5. Defendant theorizes that Plaintiff added the phrase "who assaulted me" during one of the sessions in which he had access to his medical records. ECF No. 209 at 6.

Based upon a review of the pleadings and all evidence provided, the Court finds neither Plaintiff nor Defendant has proved, by a preponderance of the evidence, who altered the Unusual Occurrence Report. It is undisputed that there were two occasions when Plaintiff had approximately an hour access to the Report: once in May 2020 and a second time in June 2020. Plaintiff acknowledged having a pen during his June 2020 session with his records, while indicating he did not have a pen during his May 2020 session. On direct examination, Plaintiff denied altering or tampering with the Unusual Occurrence Report. Defendant did not present any witness who was able to testify that Plaintiff altered the Report, nor was there sufficient evidence to find he did so.

On at least two occasions (once under oath at deposition) Castillo stated she wrote the words "who assaulted me" on the original Report she completed on the day she examined Plaintiff. At the evidentiary hearing, Castillo backtracked, but only to say she was no longer sure the handwriting was hers. This creates sufficient doubt to undermine Defendant's position that Plaintiff altered the Report.

Cluckey testified he found several instances of the Report in the Attorney General's files that predated Plaintiff's review of his medical files in which the words "who assaulted me" did not appear. This clearly cuts in favor of a finding notion that Plaintiff, rather than someone within NDOC, altered the Report. Cluckey testified that he "strongly disagreed with [Plaintiff's counsel's] conclusion that this had been something that was -- that that phrase 'who assaulted me' had been

removed instead of added."[20]  However, even after conducting and publishing his report, Cluckey did not conclude that Plaintiff, someone within NDOC, or someone related to the Attorney General's Office had altered the Unusual Occurrence Report.  While that was not Cluckey's mission, his testimony, when evaluated along with all other evidence considered, does not sufficiently support the conclusion that Plaintiff altered the document.[21]

In sum, the parties present evidence demonstrating the Unusual Occurrence Report was altered; however, by whom and when is not established to a level of certainty allowing the Court to issue case terminating sanctions against either party.  Because the Court finds neither party has met its burden supporting case terminating sanctions, the Court does not discuss the five factors set forth by the Ninth Circuit when considering such sanctions.

The Court also rejects Defendant's request for an adverse inference jury instruction.  To demonstrate such a sanction is proper, the party requesting an adverse jury inference must establish by a preponderance of the evidence (1) that the spoliating party had an obligation to preserve the evidence; (2) that the evidence was destroyed or significantly altered with a culpable state of mind; and (3) that the evidence was relevant to the other party's claim in that a reasonable trier of fact could find that it would support that claim.  *Wesco Insurance Co. v. Smart Industries Corp.*, Case No. 2:16-cv-01206-JCM-NJK, 2022 WL 4113682, at *1 (D. Nev. Aug. 8, 2022).  For the reasons stated above, Defendant failed to meet its burden.

**IV.    ORDER**

Accordingly, IT IS HEREBY ORDERED that Plaintiff's Motion for Order to Show Cause and request for sanctions (ECF No. 191) is DENIED.

IT IS FURTHER ORDERED that Defendant's Counter Motion for Sanctions (ECF No. 209) is DENIED.

---

[20] ECF No. 220 at 306:4-7.
[21] The testimony by the remaining witnesses—David Bailey, Robin Carlson, Kathy Carlson, Hillery Pichon, and Chris DeFonseka—was helpful to the Court to gain a picture of events, but these witnesses did not provide testimony that results in a finding for either party.

IT IS FURTHER ORDERED that Defendant's request that the Court grant Defendant an adverse inference jury instruction is DENIED.

DATED this 14th day of December, 2022.

_____
ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE